Opinion issued October 24, 2002.





 

 










In The 

Court of Appeals

For The

First District of Texas






NO. 01-00-00584-CV






FORMOSA PLASTICS CORPORATION, U.S.A. AND FORMOSA PLASTICS
CORPORATION, TEXAS, Appellants


V.


MATERIAL PARTNERSHIPS, INC., Appellee


* * *


MATERIAL PARTNERSHIPS, INC., Appellant


V.


FORMOSA PLASTICS CORPORATION, U.S.A. AND FORMOSA PLASTICS
CORPORATION, TEXAS, Appellees








On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 9736829





 

OPINION ON MOTION FOR REHEARING


 On June 28, 2002, we issued an opinion affirming the trial court's judgment in
part, reversing it in part, and remanding the cause. Formosa Plastics Corporation,
U.S.A. and Formosa Plastics Corporation, Texas (collectively "Formosa") have filed
a motion for rehearing. We deny the motion, but we withdraw our previous opinion
and issue this one instead.

 In its appeal, Formosa challenges the judgment in favor of Material
Partnerships, Inc. ("MPI") on MPI's claims for fraudulent misrepresentation and
unjust enrichment. By its own appeal, MPI challenges the trial court's take-nothing
judgment rendered on MPI's claim for profits lost due to Formosa's product
deficiencies and the trial court's award of attorney's fees to Formosa for breach of
contract. 

 We review (1) whether the evidence was legally and factually sufficient to
support the trial court's findings of fraudulent misrepresentation and unjust
enrichment, (2) whether the trial court erred by awarding MPI monetary damages up
to June 1998, (3) whether the trial court erred by denying MPI damages based on
profits after June 1998, (4) whether the trial court erred by awarding Formosa
attorney's fees that included time spent on the defense of MPI's tort claims, and (5)
whether the trial court erred by denying MPI recovery for alleged lost profits (MPI's
"Exhibit B" claims). We affirm the judgment in part, reverse it in part, and remand
the cause.

Facts

 Formosa Plastics Corporation, U.S.A. is the parent company that markets
plastic products manufactured at various Formosa facilities throughout the United
States. Formosa Plastics Corporation, Texas owned and operated the Formosa facility
at Point Comfort, Texas. In late 1993, Formosa began producing polyolefins (1) at its
Texas plant. The by-products of this production process included scrap plastics. 
Formosa's vice-president of sales and marketing at that time was Dick Heinle. Heinle
was responsible for the sale of polyolefins, even though he lacked experience in that
area. 

 MPI is in the business of recycling and trading the following plastic products: 
(1) certified prime resin; (2) wide-spec or off-grade resin; and (3) scrap. In 1994,
MPI had an established base of domestic customers of scrap plastics. MPI also sold
prime and wide-spec product exclusively for export. 

 MPI's president, Joel Burgower, met with Heinle in April 1994. At that
meeting, Burgower agreed to evaluate Formosa's scrap-plastic streams at the Point
Comfort facility. Shortly after Burgower completed his inspection, MPI began
purchasing prime and wide-spec product for its export customers, as well as smaller
quantities of scrap plastic, from Formosa. 

 In September 1994, Heinle contacted Burgower and offered to allow MPI to
purchase 100% percent of the scrap plastic generated in certain areas of the Point
Comfort facility. In the same conversation, Heinle mentioned that Formosa was
interested in developing direct sales and asked for MPI's help in establishing a sales
base in the domestic market. According to MPI, Heinle offered to allow MPI to assist
Formosa in securing direct domestic customers in exchange for Formosa's giving
MPI direct access and best prices for Formosa's export products. The parties agreed
to this proposal and discussed working together in this manner for the next 20 to 25
years. The parties did not discuss, much less agree, that Formosa would compensate
Burgower or MPI by commission or an agent's fee, however. 

 Following the agreement, MPI identified its previously undisclosed customers
to Formosa. Burgower introduced some of MPI's clients to Formosa representatives
without compensation and often traveled across the country to do so. (2) During this
time, several Formosa officers referred to MPI as Formosa's "partner" and to the
relationship between the two entities as a "partnership." Heinle referred to Burgower
as his "partner" several times, and Burgower frequently introduced Heinle to new
clients as his "partner," without eliciting any complaints from Heinle. Burgower
maintained that he introduced Formosa to his customers without seeking
compensation because he believed MPI had a partnership with Formosa. Formosa's
sales to customers referred to Formosa by MPI amounted to $53,013,996.51 between
1994 and June 1998. 

 As early as late 1994, Formosa noticed accounting discrepancies in MPI's
account, causing Formosa to believe that MPI was in arrears in payments to Formosa. 
While trying to reconcile MPI's account, the parties continued to conduct business
with each other, and Formosa extended MPI a $250,000 line of credit. In March
1997, Formosa stopped providing export product to MPI. At that time, MPI
discovered it had not been receiving the best prices from Formosa since some time
between August 1996 and March 1997.


 In July 1997, the parties met, without success, to resolve the dispute over
MPI's account. A few weeks later, MPI sued Formosa. MPI claimed Formosa had
sold it defective products between 1994 and 1997. MPI also claimed it had lost
profits because three companies MPI had provided with Formosa's defective products
had stopped doing business with MPI. MPI also sought damages for claims made by
third parties that had purchased Formosa's defective products. (3) Later, MPI claimed
Formosa had made a fraudulent misrepresentation and had been unjustly enriched
because Formosa's representation of a partnership caused MPI not to charge Formosa
a commission for the clients MPI had introduced to Formosa. Formosa
counterclaimed for breach of contract and sought $611,110.47 for outstanding
invoices, plus interest and attorney's fees. 

 After a bench trial, the trial court awarded MPI approximately $3.8 million on
its fraudulent-misrepresentation and unjust-enrichment claims. The trial court
awarded Formosa $598,000 on its breach-of-contract counterclaim and applied this
amount as an offset against MPI's award. The trial court also awarded Formosa
$280,000 in attorney's fees. Formosa moved to modify the judgment and,
alternatively, for a new trial. The trial court denied the motion for new trial, but
granted the motion to modify, reducing MPI's award to $2.9 million. After applying
the offset, MPI's award was approximately $2.44 million. MPI filed a motion to
modify the reformed judgment, which motion the trial court denied. 

Formosa's Appeal

 In five issues, Formosa challenges the legal and factual sufficiency of the
evidence to support the trial court's findings of fraudulent misrepresentation and
unjust enrichment and the trial court's award of damages to MPI. 


 Standard of Review


 When, as here, the appellate record contains a complete reporter's record of the
trial, we review the trial court's findings of fact under the same standards for legal
and factual sufficiency as govern review of jury findings. Min v. Avila, 991 S.W.2d
495, 500 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 

 In analyzing legal sufficiency, we consider all the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in that party's
favor. Assoc. Indem. Corp v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 
1998). We are required to determine whether the proffered evidence as a whole rises
to the level that would enable reasonable and fair-minded persons to differ in their
conclusions. Id. 

 In analyzing factual sufficiency, we must first consider, weigh, and examine
all of the evidence that either supports or is contrary to the verdict. Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 198); Hall v. Diamond Shamrock
Refining Co., L.P., 82 S.W.3d 5, 13 (Tex. App.--San Antonio 2001, no pet. h.). 
Having done so, we should then set aside the verdict only if the evidence which
supports the verdict is so weak as to be clearly wrong and manifestly unjust. Hall,
82 S.W.3d at 13. 



 Fraudulent Misrepresentation



 In its first, second, and third issues, Formosa challenges the legal and factual
sufficiency of the evidence to support the trial court's findings that Formosa
fraudulently misrepresented the existence of a partnership between Formosa and MPI. 
The trial court found that Formosa fraudulently misrepresented to MPI that the
companies were "partners" to gain access to MPI's customers and knowledge of the
plastics business. 

 A false, material misrepresentation that was either known to be false when
made or was asserted without knowledge of its truth is fraudulent. Formosa Plastics
Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). 
Fraudulent misrepresentation also requires intent that the other party rely on the
misrepresentation and be injured by that reliance. Id. A misrepresentation is a false
statement of fact or a promise of future performance made with no intent to perform. 
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986). 

 1. Misrepresentation

 Formosa appears to argue that in order to prove Formosa misrepresented the
existence of a partnership, MPI had to show that Formosa misrepresented all the
elements of a legally binding partnership: (1) a community of interest in the venture;
(2) the sharing of profits; (3) the sharing of losses; and (4) a mutual right of control
or management of the enterprise. See Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171, 176 (Tex. 1997) (citing Coastal Plains Dev. Corp. v. Micrea, Inc., 572
S.W.2d 285, 287 (Tex. 1978)). If MPI had needed to prove the existence of a
partnership, then MPI would have had to show these things. MPI did not need to
prove a partnership existed, however. In fact, to prevail on its fraudulent-misrepresentation claim, MPI had to show that no partnership existed. Therefore,
MPI did not have to show that Formosa misrepresented each of the elements of a
legally binding partnership to prove that Formosa fraudulently misrepresented that
a partnership existed between Formosa and MPI. (4)

 

 MPI produced sufficient evidence that Formosa misrepresented the existence
of a partnership. MPI presented evidence of written and oral communications by
Formosa in which Formosa referred to MPI as its partner. During one such
communication, Gary Mills, a business director for Formosa, stated that MPI had
been a good partner and that he looked forward to continuing the partnership for
years to come. In another letter, Paul Huang, a vice-president of Formosa, wrote,
"our partnership with you has always been based on more than you [sic] being an
order taker." Additionally, one of Formosa's legal counsel referred to MPI and
Formosa as "business partners." Finally, Heinle testified that he used the term
"partner" when referring to MPI and was aware of the correspondence by his
employees that referred to a partnership arrangement. Considering only the evidence
that supports the finding, while ignoring all evidence to the contrary, we hold the
evidence is legally sufficient to support the trial court's finding that Formosa
misrepresented that a partnership existed between the parties. 

 In support of its factual sufficiency challenge, Formosa points out Heinle's
testimony that Formosa never represented that any special arrangement existed
between Formosa and MPI. Although Heinle admitted he had used the term
"partner," he also testified that he commonly used that term to refer to suppliers and
customers who were not partners. Additionally, Kenneth Gross, who owned one of
the companies that MPI introduced to Formosa, testified that, although he heard
Burgower introduce MPI and Formosa as partners in Heinle's presence, people in the
plastics industry commonly used the words "partner" and "partnership" without
implicating a legal relationship. We conclude this evidence does not render the
finding that Formosa misrepresented that a partnership existed so against the great
weight and preponderance of the evidence that the finding is clearly wrong and
unjust. Therefore, we hold the evidence is factually sufficient to support that finding. 
 2. Knowledge of Falsity and Reckless Disregard of Truth

 We now turn to Formosa's legal and factual sufficiency challenges to the trial
court's finding that Formosa made misrepresentations knowingly or with reckless
disregard for the truth.

 The evidence shows that Formosa and MPI agreed that MPI would give
Formosa its customer list and that MPI would receive best price and availability from
Formosa as compensation. MPI also presented evidence that Formosa was not giving
MPI best prices, although the best-prices agreement was supposed to last 20 to 25
years, and that Formosa obtained approximately 59 million dollars worth of business
from its arrangement with MPI without incurring any substantial expense. 
Considering only the evidence tending to support the finding, we hold there is legally
sufficient evidence to support the trial court's finding that Formosa either knew its
representations of a partnership were false or acted with reckless disregard of the
truth as to whether its representations were false.

 In support of its factual sufficiency challenge, Formosa points to Heinle's
testimony that he denied he had any special arrangements with Burgower regarding
price or anything else. More specifically, Heinle denied that he agreed MPI would
bring domestic sales to Formosa in exchange for Formosa's available export product
at its best price. This evidence does not render the finding that Formosa made
misrepresentations so against the great weight and preponderance of the evidence that
the finding is clearly wrong and unjust. Therefore, we hold the evidence is factually
sufficient to support the trial court's finding. 


 Intent Not to Perform


 Formosa challenges the sufficiency of the evidence to support the trial court's
finding that Formosa did not intend to perform the promises it made to MPI, which
finding is necessary to MPI's claim for fraudulent misrepresentation. Formosa
contends there was no evidence of its officers' intent at the time the representations
were made to MPI. 

 Fraudulent intent, which is generally difficult to prove, is usually established
by circumstantial evidence. Frost Nat'l Bank v. Heafner, 12 S.W.3d 104, 112 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). To be found liable for fraudulent
misrepresentation, a party must have no intent to perform when a promise is made,
although lack of intent to perform may be inferred from the party's acts after the
representation is made. Spoljaric, 708 S.W.2d at 434. Intent is a fact question vested
with the trier of fact because it depends on the credibility of the witnesses and their
testimony. See id. 

 Burgower testified that Formosa agreed to provide best prices for 20 to 25
years. There was evidence that Formosa stopped giving MPI best prices some time
between August 1996 and March 1997. Heinle denied the existence of the best-prices
agreement, but such a denial is merely a factor in determining intent. Spoljaric, 708
S.W.2d at 435. In fact, Formosa gave contradictory statements: Formosa claimed it
stopped providing best prices because of MPI's late payments, but also contended
that there was no agreement to provide best prices. Considering the evidence that
supports the finding, while ignoring all evidence to the contrary, we hold the evidence
is legally sufficient to support the trial court's finding of fraudulent intent. 

 In support of its factual sufficiency challenge, Formosa offered evidence that
it intended to fulfill its duties under the agreement with MPI. Of course, Heinle,
Formosa's own witness, also denied the agreement even existed. Considering
Formosa's contradictory statements, we hold the evidence is not so against the great
weight and preponderance of the evidence that the finding is clearly wrong and
unjust. Accordingly, we hold the evidence is also factually sufficient to support the
trial court's finding of fraudulent intent. 

 4. Reasonableness of Reliance

 Formosa does not contest MPI's claim that MPI relied on the existence of a
business agreement, but challenges the legal and factual sufficiency of the evidence
to support the trial court's finding that the reliance was reasonable. MPI offered
evidence that Formosa had no experience in the polyolefin market and that Formosa
gained 59 million dollars in sales from the customers MPI introduced to Formosa. 
MPI also showed that the customary compensation for this service is a 5%
commission on gross sales price. MPI did not charge the 5% fee because it relied on
the supposed partnership agreement, which was intended to compensate MPI for the
services. MPI offered evidence that it believed it had received best prices for some
amount of time, but that Formosa had later stopped making the product available at
best prices. As a result, MPI's evidence showed that it was not fully compensated for
its service to Formosa. Moreover, MPI incurred expenses without compensation
because it was relying on the partnership. Considering the evidence that supports the
finding, while ignoring all evidence to the contrary, we hold the evidence is legally
sufficient to support the trial court's finding MPI's reliance was reasonable.

 

 Formosa contends that MPI's reliance was not reasonable because MPI did not
assert its partnership and commission theories until a year after filing suit and MPI
never inquired about profits or commissions. Formosa's evidence does not make the
trial court's finding so against the great weight and preponderance of the evidence
that the finding is clearly wrong and unjust.

 We overrule Formosa's first, second, and third issues.


 Unjust Enrichment


 In issues four and five, Formosa challenges the trial court's finding that
Formosa was unjustly enriched as not supported by legally or factually sufficient
evidence. Formosa argues it was not unjustly enriched because MPI received the
benefit of its bargain from Formosa in the form of best prices and availability. 
Formosa also contends that a valid agreement governing the terms of compensation
precludes recovery for unjust enrichment. 

 The law creates an implied obligation when a party is unjustly enriched in a
manner not governed by binding contract. Burlington N. R.R. Co. v. S.W. Elec. Power
Co., 925 S.W.2d 92, 97 (Tex. App.--Texarkana 1996), aff'd, 966 S.W.2d 467 (Tex.
1998). Recovery for unjust enrichment is appropriate when an agreement is
unenforceable, invalid, not fully performed, or void for other legal reasons. Id. 
Unjust enrichment applies the principles of restitution to disputes that are not
governed by contract and is usually found when a party obtains a benefit from another
by fraud, duress, or the taking of an undue advantage. Id. 

 The trial court found that Formosa's fraudulent misrepresentations unjustly
enriched Formosa to MPI's detriment and, accordingly, awarded monetary
compensation based on the reasonable value of the services MPI had rendered to
Formosa. Formosa argues that the finding of unjust enrichment was improper
because (1) the trial court's finding of fraudulent misrepresentation was improper; (2)
MPI received what it had bargained for, namely, best prices and availability for a
period of time; and (3) the existence of a valid, binding agreement barred equitable
relief under the theory of unjust enrichment. 

 Because we have already held there was sufficient evidence to support the trial
court's finding of fraudulent misrepresentation, Formosa's first argument--that the
trial court's finding of fraudulent misrepresentation was unjust--necessarily fails. 
Formosa's third argument--that a binding agreement bars equitable relief--also fails,
regardless of how we construe that argument. For example, if we construe Formosa's
third argument to mean that the parties had some type of binding agreement (just not
a partnership) under which MPI introduced customers, divulged customer lists, and
assisted in sales, the trial court made no such finding. Rather, the trial court found
only that no partnership agreement existed. If, on the other hand, we construe
Formosa's third argument to mean that the parties had a binding partnership
agreement, the trial court necessarily found the opposite when it found Formosa had
misrepresented a partnership's existence, a finding we have upheld. Thus, Formosa's
third argument fails. 

 Formosa's second argument--that MPI received what it had bargained for--is
two-pronged. 

 1. MPI Allegedly Received the Benefit of the Bargain

 Formosa first contends that, because MPI received best prices and availability
for some period of time, MPI received the benefit of its bargain. There was sufficient
evidence, however, to support the opposite conclusion. The nature of the agreement
required that (1) MPI disclose its customer list immediately, and (2) Formosa
compensate MPI in the form of best prices and availability for 20 to 25 years. MPI
presented evidence it did not receive best prices for the full three years the parties
operated under the agreement. Furthermore, MPI presented evidence that it would
not have been fully compensated even if Formosa had offered it best prices for the
three years the parties operated under the agreement. When one has received or used
something that warranted compensation to another, the remedy is money payment for
the value of the thing given or the benefit received. City of Harker Heights v. Sun
Meadows Land, Ltd., 830 S.W.2d 313, 319 (Tex. App.--Austin 1992, no writ). We
hold there was sufficient evidence to show MPI did not receive the benefit of its
bargain.


 Monetary Compensation Improper


 Second, Formosa cites Peko Oil USA v. Evans to support its contention that,
because MPI bargained for a business advantage, monetary compensation is
improper. Id., 800 S.W.2d 572, 574 (Tex. App.--Dallas 1990, writ denied). In Peko
Oil, Sunbelt Oil introduced Peko Oil to the Texaco Program, which Peko Oil entered. 
Id. After Peko Oil signed a letter of intent with Texaco, Sunbelt Oil demanded to
become Peko Oil's exclusive gas marketing agent. Id. Peko Oil refused Sunbelt's
demand, but offered an alternate arrangement. Id. Sunbelt Oil refused and sought the
cash value of the services allegedly provided. Id. at 574-75. Under the principle of
quantum meruit, the plaintiff must show that the party sought to be charged had
reasonable notice that the plaintiff sought to be paid. Id. at 575. The Peko Oil court
held that, because Sunbelt Oil was seeking a future business advantage, not
compensation, Peko Oil did not have proper notice that Sunbelt Oil expected to be
paid; that lack of notice precluded recovery under the theory of quantum meruit. Id.
at 567-77. Peko Oil can be distinguished in two fundamental respects. 

 First, Sunbelt Oil provided Peko Oil a service before discussing compensation,
which sequence would suggest that the service was provided gratuitously. See id. at
577. In this case, however, MPI did not release its customer list to Formosa until an
agreement ensured that MPI would be compensated for this service. There is no
evidence that MPI gave its personal customer list to Formosa gratuitously. 

 Second, Sunbelt Oil was attempting to recover under the equitable remedy of
quantum meruit, a theory that does not involve the issue of fraud. See id. Quantum
meruit is based on a promise implied in law to pay for beneficial services rendered
and knowingly accepted. Id. at 575. An element that must be proved to recover under
quantum meruit is that the person sought to be charged was reasonably notified that
the plaintiff, in performing such services, was expecting to be paid by the person
sought to be charged. Id. Quantum meruit is an equitable remedy, grounded in
principles of unjust enrichment, but is only one of a number of equitable remedies
available. Harker Heights, 830 S.W.2d at 318. Unavailability of quantum meruit
does not preclude other remedies. See id. MPI did not attempt to recover under the
principle of quantum meruit. MPI sought to recover under the equitable theory of
unjust enrichment. Thus, Peko Oil does not apply.

 We hold the trial court did not err in awarding damages based on the theory of
unjust enrichment. 

 We overrule Formosa's fourth and fifth issues.


MPI's Appeal

 MPI brings its own appeal, claiming that (1) the trial court erred by finding that
MPI suffered no recoverable damages after June 1998, based on its fraudulent-misrepresentation and unjust-enrichment claims; (2) the trial court erred by awarding
Formosa attorney's fees without requiring Formosa to segregate the fees
corresponding to defending MPI's claims from the fees corresponding to successfully
prosecuting Formosa's counterclaim; and (3) the trial court erred by finding that MPI
did not suffer any damages as a result of freight overcharges, lost or damaged freight,
or breach of contract that resulted from Formosa's actions.


 MPI's Damages


 In its first issue, MPI contends the trial court erroneously cut off MPI's
damages after June 1998. The trial court found the reasonable value of the unjust
benefit to be 5% of the total sales by Formosa to companies introduced by MPI
through June 5, 1998. MPI was awarded approximately $2.9 million in damages. 

 MPI argues it conclusively proved that its damages did not stop in June 1998
because MPI presented uncontroverted expert testimony establishing damages up to
the time of trial. See Homes v. Alwattari, 33 S.W.3d 376, 383 (Tex. App.--Fort
Worth 2000, pet. denied) (holding that in a legal sufficiency challenge, when there
is an adverse finding on an issue that appellant had the burden of proving, appellant
must show it conclusively established the issue). MPI first addresses the trial court's
refusal to award past damages from June 1998 up to the time of trial, September
1999, and then MPI turns to future damages.

 1. Past Damages: June 1998 to September 1999

 MPI contends the trial court erred in failing to award MPI past damages from
June 1998 to the date of trial in September 1999, as extrapolated by its expert witness
and based on the figures from April 1994 through June 1998. MPI asserts that,
because the expert testimony it offered was unchallenged and uncontroverted, MPI
conclusively proved damages in that amount and the trial court was thus not free to
disregard its expert's testimony of damages.

 The trial court did not err in awarding MPI damages through June 1998
because the trial court could properly have disregarded MPI's sole evidence of
damages after that date. The damages MPI sought were for lost profits. Recovery of
lost profits must be shown with a reasonable degree of certainty, and opinions or
estimates must be based on objective facts, figures, or data from which lost profits
can be ascertained. Holt Atherton Indus. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). 
MPI's expert calculated the profits lost after June 1998 by extrapolating sales figures
from before June 1998. The expert did not base his calculations on Formosa's actual
sales figures after 1998, although such post-June 1998 sales figures were available. 
It was reasonable for the court to require actual data instead of extrapolations
calculated by MPI's expert witness. In cases involving lost earnings, the burden of
proof for past earnings is greater than that for future earning capacity because
evidence of a plaintiff's actual past earnings is certain. Strauss v. Continental
Airlines, Inc., 67 S.W.3d 428, 435 (Tex. App.--Houston [14th Dist.] 2002, no pet.). 
Similarly, lost profits could have been accurately shown from actual sales from June
1998 until the time of trial. Therefore, MPI had a higher burden of proof. Because
accurate evidence was available, but not presented, the trial court did not err in
refusing to consider the extrapolations of MPI's experts based on past profits. 

 MPI relies on cases that do not involve the reasonably certain establishment of
past lost profits. See Ralston Purina Co. v. Barkley Feed & Seed Co., 722 S.W.2d
431, 434 (Tex. App.--Houston [1st Dist.] 1986), rev'd on other grounds, 744 S.W.2d
932 (Tex. 1988); Mack v. Moore, 669 S.W.2d 415, 419 (Tex. App.--Houston [1st
Dist.] 1984, no writ); Schwartz v. Pinnacle Comm., 944 S.W.2d 427, 433-36 (Tex.
App.--Houston [14th Dist.] 1987, no writ). Furthermore, expert testimony is
conclusive only if the nature of the subject matter requires that the fact finder be
guided solely by the opinion of experts and the evidence is otherwise credible and
free from contradiction. Mack, 669 S.W.2d at 419. Because MPI could have
presented evidence regarding the actual sales Formosa made between June 1998 and
the time of trial to companies MPI introduced to Formosa, the nature of the subject
matter did not demand that the fact finder be guided solely by the opinion of experts. 
For these reasons, the trial court did not err in finding that lost profits were not shown
with reasonable certainty from June 1998 until the time of trial.

 2. Future Damages: September 1999 to 2004

 MPI contends the trial court erred by not allowing MPI to recover future
damages because the expert testimony of future damages was clear, direct, positive,
and uncontroverted and, thus, was conclusively proved.

 MPI's expert did not provide a basis for extrapolating a 20- to 25-year
agreement through the year 2004, however. Therefore, the trial court did not err in
determining that future damages were not proved with reasonable certainty and, thus,
that MPI's award of damages should not be extrapolated through the year 2004.

 We overrule MPI's first issue.


 Attorney's Fees 


 In its second issue, MPI asserts that the trial court erred by awarding Formosa
attorney's fees both for successfully prosecuting its counterclaim for breach of
contract and for unsuccessfully defending MPI's claims. The trial court awarded
Formosa $280,000 in attorney's fees. That amount represented compensation for the
hours Formosa's law firm spent defending against MPI's fraudulent-misrepresentation and unjust-enrichment claims, as well as the hours the firm spent
prosecuting Formosa's counterclaim for breach of contract. The trial court did not
require that Formosa segregate the fees corresponding to defending MPI's claims
from the fees corresponding to prosecuting Formosa's counterclaim successfully.

 As a general rule, the party seeking to recover attorney's fees carries the burden
of proof. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). 
Attorney's fees are not recoverable from an opposing party unless provided for by
statute or by contract between the parties. Travelers Indem. Co. of Connecticut v.
Mayfield, 923 S.W.2d 590, 593 (Tex. 1996). Section 38.001 of the Civil Practice and
Remedies Code authorizes recovery of attorney's fees for suits on a contract, but does
not apply to defense of actions for fraudulent misrepresentation and unjust
enrichment. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997). (5) 

 A party is generally required to segregate fees for claims for which fees are
recoverable from fees associated with claims that do not permit recovery. Stewart
Title, 822 S.W.2d at 10-11. "A recognized exception to this duty to segregate arises
when the attorney's fees rendered are in connection with claims arising out of the
same transaction and are so interrelated that their 'prosecution or defense entails
proof or denial of essentially the same facts.'" Id. at 11; Flint & Assoc. v.
Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.--Dallas
1987, writ denied). When the causes of action involved depend on the same set of
facts or circumstances and are thus intertwined to the point of being inseparable, the
party suing for attorney's fees may recover the entire amount covering all claims. 
Stewart Title, 822 S.W.2d at 11.

 In moving for a partial new trial, Formosa claimed that "MPI's unjust
enrichment claim and award for commissions do not share the same facts and issues
as Formosa's counterclaim to collect an overdue debt." Formosa also contends, and
we agree, that its own counterclaim is "factually and legally separable" from MPI's
claim. In addition to these admissions by Formosa, the record shows that Formosa's
counterclaim for a breach of contract arising out of unpaid invoices does not share the
same facts and issues as MPI's claims for fraudulent misrepresentation and unjust
enrichment. Accordingly, the exception articulated in Stewart Title does not apply,
and the trial court erred by not requiring Formosa to segregate its attorney's fees. (6) 

 Because the determination of reasonable attorney's fees is a question for the
trier of fact, we remand the cause to the trial court for determination of what portion
of the $280,000 awarded to Formosa as attorney's fees is attributable to the successful
prosecution of Formosa's counterclaim. See Stewart Title, 822 S.W.2d at 12. The
portion of the $280,000 that corresponds to Formosa's defense of MPI's unjust-enrichment and fraudulent-misrepresentation claims cannot be awarded to Formosa
and must be deleted. See id.

 We sustain MPI's second issue.


 MPI's "Exhibit B" Claims


 In its third issue, MPI challenges the findings of the trial court that MPI did not
suffer any damages as a result of freight overcharges, lost or damaged freight, or
breach of contract, the bases of MPI's"Exhibit B" claims. We apply the usual
standards of review. See Dow Chem., 46 S.W.3d at 241-42. MPI claims that it presented conclusive evidence to prove it was entitled to
damages, while Formosa offered no controverting evidence. Burgower testified that
MPI suffered damages because Formosa either did not perform its part of the
agreement with MPI, performed the agreement in an untimely fashion, or rendered
substandard performance. During Burgower's cross-examination, Formosa
repeatedly challenged Burgower on the ground he did not support his testimony with
documentary evidence. Formosa did not offer any evidence controverting
Burgower's claims. The trial court found that MPI did not prove the alleged damages
on any of those claims. (7)

 Although supporting documentation may affect the weight of evidence, it is
generally not necessary to produce, in court, the documents that support opinions or
estimates of damages arising from lost profits. See Heine, 835 S.W.2d at 84. 
Burgower did not support his testimony on transaction numbers 5, 6, 13, 14, 16, 17,
22, 30, and 33 with corroborating documentary evidence. Although his lack of
documentation might have affected the weight the trial court placed on this evidence,
the lack of documentation did not automatically invalidate his claims for lost profit
damages.

 As the trier of fact, the trial court is the sole determiner of the credibility of the
witnesses and the weight to be given their testimony, and we may not substitute our
judgment for that of the fact finder simply because we may disagree with the fact
finder's conclusions. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). 
Because they can observe a witness's demeanor, trial courts are given great latitude
as fact finders to believe or disbelieve a witness's testimony, particularly when the
witness is interested in the outcome. In re Doe 4, 19 S.W.3d 322, 325 (Tex. 2000). 
Moreover, the trial court can reject the uncontroverted testimony of an interested
witness unless the testimony is readily controvertible, clear, positive, and direct and
there are no circumstances that tend to discredit or impeach the testimony. Id.; Lofton
v. Texas Brine Corp., 777 S.W.2d 384, 386 (Tex. 1989).

 MPI's lack of written documentation to corroborate Burgower's verbal
testimony as to transaction numbers 5, 6, 13, 14, 16, 17, 22, 30, and 33 could have
caused the trial court to question the veracity of, and to discredit, Burgower's
testimony. See Heine, 835 S.W.2d at 84. It was, therefore, within the province of the
trial court, as the sole fact finder, to reject Burgower's uncontroverted testimony. See
id. Accordingly, the evidence was both legally and factually sufficient to support the
trial court's findings of fact relating to transaction numbers 5, 6, 13, 14, 16, 17, 22,
30, and 33. (8)

 We overrule MPI's third issue.













Conclusion

 We reverse the part of the trial court's judgment that awarded Formosa
attorney's fees without requiring Formosa first to segregate those fees. We affirm the
trial court's judgment in all other respects. We remand the cause to the trial court to
determine the portion of Formosa's attorney fees associated with Formosa's
counterclaim. This is a limited remand. See Hudson v. Wakefield, 711 S.W.2d 628,
630 (Tex. 1986); Hansen v. Academy Corp., 961 S.W.2d 329, 331 (Tex.
App.--Houston [1st Dist.] 1997, writ denied). 



 Tim Taft 

 Justice


Panel consists of Justices Taft, Wilson, (9) and Price. (10)

Justice Wilson, dissenting.

Do not publish. Tex. R. App. P. 47.
1. Polyolefins are polymers derived from chemicals known as olefins that can
form tough, flexible plastic materials with a variety of uses.
2. As a general rule, in this industry, those who bring buyers and sellers together
earn a 4 to 6% commission of the gross sales their customers generate.
3. The parties collectively refer to these claims as MPI's "Exhibit B" claims.
4. Formosa cites several cases for the proposition that neither the mere use of the
words "partner" and "partnership" nor the subjective understanding of one of
the parties that a partnership exists is sufficient to establish a legally binding
partnership. These cases are irrelevant because the trial court did not find that
a legally binding partnership existed between Formosa and MPI. Rather, the
trial court found that Formosa had fraudulently misrepresented to MPI that
Formosa and MPI were partners when they were not. 
5. A person may recover reasonable attorney's fees from an individual or
corporation, in addition to the amount of a valid claim and costs, if the claim
is for (1) rendered services, (2) performed labor, (3) furnished material, (4)
freight or express overcharges, (5) lost or damaged freight or express, (6) killed
or injured stock, (7) a sworn account, or (8) an oral or written contract. Tex.
Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997). 
6. Formosa relies on Republicbank Dallas, N.A. v. Shook, 653 S.W.2d 278 (Tex.
1983), to contend that segregation may not be required when the same party
defends against a claim and also prosecutes its own counterclaim. In Shook,
the supreme court held that part of the defendant/counter-plaintiff's "suit . . .
involved its overcoming [the plaintiff's] claims" and that the
defendant/counter-plaintiff "had to overcome [the plaintiff's] claims before it
could recover" on its counterclaim. Id. at 282. In this case, Formosa did not
have to overcome MPI's claim of unjust enrichment in order to prevail on its
counterclaim of unpaid invoices because the claim and counterclaim were not
based on the same set of facts. Accordingly, Shook's holding is inapplicable
to this case.
7. For example, with regard to transaction number 30, in which MPI claimed
damages of $315 arising out of increased shipping costs MPI incurred while
shipping goods out of Formosa's plant, Burgower produced a letter he sent to
Formosa, as well as a check to the trucking company. Burgower's letter, dated
September 1, 1995, described a problem MPI allegedly had with shipping
product out of Formosa's Point Comfort plant; the letter stated that MPI had
to pay $482.55 and $235.00 to two separate companies for shipping the
product. MPI also produced a check stub dated September 30, 1995, paid out
to Safeway Transportation for $350. The letter and check were not linked in
any way, and the numbers referenced in the two documents did not explain
how MPI arrived at a loss figure of $315. The trial court found that MPI did
not prove the damages it alleged in this claim.
8. MPI seeks attorney's fees associated with prosecuting its "Exhibit B" claims
in the event it prevails. MPI cannot be awarded attorney's fees because it does
not prevail. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1985). 
9. The Honorable Davie L. Wilson, who retired on March 31, 2002, continues to
sit by assignment for the disposition of this case, which was submitted on May
7, 2001.
10. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.