**CITY OF HARKER HEIGHTS, TEXAS, Appellant,**

v.

**SUN MEADOWS LAND, LTD. and Silver Creek Development Company, Appellees.**

**No. 3–91–160–CV.**

Court of Appeals of Texas, Austin.

May 6, 1992.

Rehearing Overruled June 10, 1992.

---

6. See TEX.R.APP.P. 50(d) (Vernon's Special Pamphlet 1992).

Arthur L. Walker, Austin, for appellant.

Michael G. Cosby and Aubrey R. Williams, Waco, for appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

B.A. SMITH, Justice.

The City of Harker Heights ("the City") appeals from an adverse judgment rendered in a suit brought by two developers. Sun Meadows Land, Ltd. ("Sun Meadows") and Silver Creek Development Company ("Silver Creek") sued the City on counts of breach of contract, failure of consideration, money had and received, constructive trust, and mutual mistake, seeking damages and recovery of funds escrowed with the City at the time their subdivisions were approved. The trial court rendered judgment on the jury verdict, awarding the developers no damages but permitting them to recover their escrowed funds, less the value of certain road improvements made by the City, plus prejudgment interest. We will affirm the trial court's judgment.

## BACKGROUND

In July 1987, James Saunders and Enzo Pellegrino each sought City approval of their respective subdivisions, Sun Meadows III and Silver Creek. The proposed subdivisions were adjacent to each other and both abutted Old Nolanville Road, a road built and maintained by Bell County. The City of Harker Heights lies on one side of Old Nolanville Road, the city of Nolanville on the other. A new elementary school built on the Harker Heights side of the road led to increased daily traffic on Old Nolanville Road, primarily due to school children being transported to and from school. Harker Heights officials considered the county road to be below city standards: it had no sidewalks or curbs, the surface was substandard, it was too narrow for the increased traffic, and a dangerous "S" curve presented a traffic hazard. Concerns about improving Old Nolanville Road were heightened when the City was asked to approve the two new subdivisions which would potentially add to its congestion.

Some agreement was reached whereby the City would approve the two subdivision plats if each developer would escrow his respective share of the City's projected costs of annexing and improving Old Nolanville Road at some future time; this plan was calculated to save assessment of each individual who owned a lot adjacent to the road when the City eventually annexed the county road.

Together, the subdivisions extended 5600 frontage feet along the road. The City's Director of Public Works estimated the road improvement costs to be thirty-eight dollars per foot. In March 1988, Sun Meadows posted a letter of credit with the City in the amount of $36,945.50 and subsequently received final approval for its subdivision plats. In July 1988, the City deducted $46,011.54 from amounts owed to Mr. Pellegrino on another project and Silver Creek received final plat approval.

The City never annexed Old Nolanville Road. Bell County made certain improvements to the road, but not all of those contemplated by the City. The county required the City to install a storm-drainage system at an estimated cost of $155,000. The City also put in curbs and gutters on its side of the road at an estimated cost of $12,500.

The developers protested when the City spent their escrowed funds but never annexed Old Nolanville Road in order to make the improvements necessary to bring it up to city standards. The parties disputed the nature of the agreement surrounding the escrowed funds. The City maintained that the developers' funds merely secured early approval of the subdivision plats and did not obligate the City to spend the funds in any particular fashion. The developers insisted, however, that the City agreed to make specific improvements to Old Nolanville Road, estimated to cost thirty-eight dollars per foot, and further agreed not to draw on the escrowed funds until other adjacent landowners were assessed their respective shares of road improvement costs. When the City refused to refund the escrowed funds because it no longer had them, Sun Meadow and Silver Creek filed this suit, seeking restitution of the funds and damages for breach of contract, failure of consideration, money had and received, constructive trust, and mutual mistake.

After trial to a jury, both parties moved for judgment on the verdict. The court rendered judgment for the developers on the verdict, awarding $31,000 to Sun Mead-

ows and $39,000 to Silver Creek, plus prejudgment interest.

The City brings three points of error on appeal: (1) the court erred in entering a verdict for the developers because the jury's finding that the City breached its agreement with the developers precluded recovery on a theory of unjust enrichment; (2) the court erred in disregarding the jury's material findings that the City breached its agreement and that the developers suffered zero damages as a result of that breach; and (3) there was no evidence to support submitting the unjust enrichment issue to the jury.

## ANALYSIS

### Restitution for Unjust Enrichment

■ In points of error one and two, the City suggests that "where there exists a valid express contract covering the subject matter, there can be no implied contract." *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex.1964). Because the jury implicitly found an agreement (by finding the City breached its agreement with Sun Meadows and Silver Creek), the City argues that the developers cannot recover their escrowed funds on a theory of unjust enrichment. Because the jury found the City breached its agreement but failed to find that the developers suffered any damages from the breach, the City argues that any recovery on a theory of unjust enrichment is precluded. The City thus contends that the jury's answers regarding the breach and the lack of damages were material findings that the trial court could not disregard to render a judgment in favor of the developers. *See* Tex. R.Civ.P.Ann. 301 (Supp.1992) ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any . . . .").

■ It is the duty of courts to reconcile apparent conflicts in jury findings whenever reasonably possible. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 195 (Tex.1966) (citing *Texas & Pac. Ry. v. Snyder*, 321 S.W.2d 280, 282 (Tex.1959)). But if a finding creates a fatal conflict with

other findings such that judgment cannot be rendered in favor of a party, that finding is material and may not be disregarded. 4 Roy W. McDonald, *Texas Civil Practice in District and County Courts* § 17.31, at 239–40 (Frank W. Elliott ed., rev. ed. 1984). The City contends that the finding of an agreement and the finding that the City was unjustly enriched are in fatal conflict. Sun Meadow and Silver Creek assert that the findings can be reconciled by proper rules of construction. We agree with the developers that the court properly rendered judgment on the verdict without disregarding a material finding.

▆▆▆▆ Restitution for unjust enrichment is often an appropriate measure of recovery for breach of contract, for example in a case where the complaining party's expectation damages are too hard to measure. Dan B. Dobbs, *Remedies* § 4.1, at 222 (1973). Restitution involves restoring property or money taken from the plaintiff. It is a measure of damages, not a cause of action. Unlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff. The principle that underlies the remedy of restitution is the avoidance of unjust enrichment:

> The principle, once again, is to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.

*Id.* at 224.

▆▆▆▆ The law of restitution for unjust enrichment emerged both in law and in equity. In law, the courts developed a form of action known as assumpsit; "money had and received" was a common count in general assumpsit to restore money "that in equity and good conscience belongs to another." *Key Pontiac, Inc. v. Blue Grass Sav. Bank,* 265 N.W.2d 906, 908 (Iowa 1978); *see also Staats v. Miller,* 243 S.W.2d 686, 687 (Tex.1951). Under such a count, the right of recovery exists independent of the parties' agreement or intent, when one holding another's funds would be unjustly enriched if the law did not presume a promise to restore the funds. *Coast Trading Co., Inc. v. Parmac, Inc.,* 21 Wash.App. 896, 587 P.2d 1071, 1075 (1978).

▆▆▆▆ An action for money had and received may be founded upon an express agreement or one implied in fact, but it is not dependent upon either. *Tidwell v. O'Bryan's Adm'r.,* 297 Ky. 749, 181 S.W.2d 260, 261 (1944). The United States Supreme Court recognized the equitable principles underlying this cause of action as early as 1933:

> This is often called an equitable action and is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which *ex aequo et bono* belongs to the plaintiff.

*U.S. v. Jefferson Elec. Mfg. Co.,* 291 U.S. 386, 402–03, 54 S.Ct. 443, 449, 78 L.Ed. 859 (1933) (citations omitted).

Equity also developed several devices to award restitution, including the constructive trust and the equitable lien. But behind all of the devices lay the very general principle of avoiding unjust enrichment.

> Today, there is wide recognition that the principle involved in these cases is the unjust enrichment principle, and with some sad exceptions, courts ... have sought to make the law conform to this principle, without too much regard to whether the case arose in law or equity. . . .

Dobbs, *Remedies* § 4.1 at 225.

By 1937 the law of restitution had become sufficiently recognized by the American Law Institute to deserve its own Restatement, setting forth the following generalization:

> [T]hat [Restitution] would lie in all the cases where one had received or used something for which it was just that he should compensate another, the remedy being a money payment for the value of

the thing given or the benefit received.... [I]ts avowed ethical basis distinguishes it from most judicial statements, and its indefiniteness makes easy an extension of liability to newly arising situations.

Restatement of Restitution, Introductory Note at 8–9 (1937).

The City has cited several Texas cases holding that recoveries on an express contract and in quantum meruit are inconsistent. *See, e.g., Truly v. Austin*, 744 S.W.2d 934 (Tex.1988); *Woodard*, 384 S.W.2d 674; *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144 (Tex.App.1988, writ denied). Quantum meruit is founded on the principle of unjust enrichment, but it involves the specific situation where plaintiff has performed services which benefitted defendant. "Recovery in quantum meruit will be had when nonpayment for the services rendered would 'result in an unjust enrichment to the party benefitted by the work.'" *Vortt Exploration v. Chevron U.S.A.*, 787 S.W.2d 942, 944 (Tex.1990) (citing *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex.Civ.App.1977, writ ref'd n.r.e.)). However, if these parties contracted for the rendition of services, the contract must govern plaintiff's compensation. *Truly*, 744 S.W.2d at 936.

Quantum meruit is an equitable remedy grounded in the principle of unjust enrichment, but it is only one of many remedies developed in law and equity to avoid unjust enrichment. Although the presence of a valid contract governing the rendered services may defeat a recovery in quantum meruit, the finding of an agreement does not defeat all restitution remedies grounded in the principle of unjust enrichment. *See, e.g., Barrett v. Ferrell*, 550 S.W.2d 138 (Tex.Civ.App.1977, writ ref'd n.r.e.) (court considers damages sought under a contract and the alternative plea of restitution for unjust enrichment); *Pasadena Assoc. v. Connor*, 460 S.W.2d 473, 480 (Tex.Civ.App.1970, writ ref'd n.r.e.) (restoring money paid under a contract, "which was never completed and from which no benefits were received"); *Statz v. Adams*, 55 S.W.2d 882 (Tex.Civ. App.1932, no writ) (jury found a contract which the plaintiff failed to read and rendered verdict restoring money paid).

In Question No. One, the jury was asked: "Did the City of Harker Heights, Texas, fail to comply with its agreement, if any, with Sun Meadows Land, Ltd. and Silver Creek Development Co.?" Answer: "Yes." But no questions were submitted to ask the jury to define the terms of the agreement. The terms of the oral agreement causing the developers to escrow approximately $83,000 with the City was at the heart of this dispute. The City maintained that the only thing it ever agreed to do was to give early approval to the Sun Meadow and Silver Creek subdivisions. The developers protested that they would never have paid to have their subdivisions approved; rather, they advanced the funds as a preassessment for specific road improvements the City was to make after annexing Old Nolanville Road and after assessing adjacent landowners.

In Question No. Two, the jury was asked: "Has the City of Harker Heights, Texas, been unjustly enriched with respect to the funds received from Sun Meadow Land, Ltd. and Silver Creek Development Co.?" Answer: "Yes." In answer to Question No. Three, the jury found that the City had been unjustly enriched by $31,000 in funds received from Sun Meadows and by $39,000 in funds received from Silver Creek. The jury appears to have subtracted from the developers' escrowed funds the value of the curbs and gutters the City installed along Old Nolanville Road in determining the amount of the City's unjust enrichment.

In Question No. Four, the jury was asked what sum of money would reasonably compensate the developers for their damages, if any, from the City's breach and it answered "None." The jury was asked to consider only two elements of damage: (1) money tendered to the City, and (2) diminished land values. The developers did not convince the jury that the value of the lots in the two subdivisions had been diminished by the City's failure to annex and improve Old Nolanville Road. Likewise, the jury did not award damages for "money ten-

dered" because in the answer to the previous question that same amount of money, less the value of the benefits received, had been awarded to plaintiffs to avoid the City's unjust enrichment. We think the trial court properly reconciled any apparent conflict between the answers to Questions Three and Four to render judgment for Sun Meadows and Silver Creek on the verdict.

 The finding of an unspecified agreement between the City and the developers, that the City breached in ways that are never defined, does not preclude a judgment for the developers based on the jury's verdict that the City was unjustly enriched. Indeed, the principle of unjust enrichment suggests that restitution is an appropriate remedy in circumstances where the agreement contemplated is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *See, e.g., Pasadena Assoc.*, 460 S.W.2d 473 (Hospital should be restored value of what it parted with under a contract which was never completed and from which no benefits were received); *Statz*, 55 S.W.2d 882 (either mutual mistake or legal fraud entitled party to recover money paid for which the consideration failed); *Key Pontiac, Inc.*, 265 N.W.2d 906 (action for money had and received lies where money is given for special purpose which is impossible to carry out).

We overrule points of error one and two.

*No Evidence.*

 In its third point of error, the City maintains that there is no evidence to support the submission to the jury of an unjust-enrichment issue. In reviewing a "no evidence" challenge, we consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. The court must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Stafford*, 726 S.W.2d at 16. Any probative evidence supporting the finding will be sufficient to overrule the point of error. Robert W. Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361, 364 (1960).

The developers sought to prove that the City escrowed their funds for the specific purpose of annexing and improving Old Nolanville Road to bring it up to city street standards. They introduced evidence that the Director of Public Works for the City assessed them thirty-eight dollars per linear foot fronting on the road, based on the projected costs of specific improvements. The developers testified that they understood the escrowed funds would simply save the City from assessing individual homeowners at the time of a future assessment, but that no funds would be drawn until the road was annexed and other landowners were assessed. The City testified that they never annexed the road and they never assessed other adjacent landowners.

The City's defense to the money had and received claim was threefold: (1) that the developers paid only for early approval of their plats and the City was not obligated to spend the money on the road improvements; (2) that the county made certain road improvements (albeit not the ones the City had planned to make) and therefore the developers received their benefit; and (3) that the City expended some $155,000 putting in place a storm-drainage system for Old Nolanville Road, a benefit to the developers far exceeding the $83,000 they placed in escrow.

The City testified that no other developer had ever paid to get a subdivision plat approved. The City testified that plans to annex the county road were abandoned when the departure of twenty-thousand Fort Hood soldiers to Saudi Arabia seriously undermined the local economy. The City admitted that it was required to install the storm-drainage system by Bell County and that no landowners were assessed for this expenditure. The City explained that subdivision developers were normally required to escrow funds to secure performance of projects promised to obtain subdivision approval, but that this rationale did not apply to the developers of Sun Meadow or Silver

Creek who had completed all requirements for plat approval. James Saunders testified that he was not required to install storm drainage for Old Nolanville Road to secure plat approval for Sun Meadows. There was evidence that the City Manager or the Director of Public Works may have promised the two developers that specific road improvements would be made with the escrowed funds after annexation, but that the City Council never officially ratified such an agreement.

We conclude that there is more than a scintilla of evidence to support submitting the issue of unjust enrichment to the jury. We overrule the City's third point of error.

We affirm the trial court's judgment.