# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00684-CV

**Kiva, Inc., Appellant**

**v.**

**Central Texas Barricades, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-04-281824, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kiva, Inc. appeals from a judgment rendered in favor of Central Texas Barricades ("CTB"). CTB filed a suit on a sworn account seeking payment of invoices CTB submitted to Kiva in connection with its work as Kiva's subcontractor on a municipal construction project. In the alternative, CTB sought damages for breach of contract or to recover under quantum meruit. After a bench trial, the district court rendered judgment in CTB's favor on its suit on a sworn account. The district court denied Kiva's counterclaim seeking damages caused by CTB's alleged non-performance. In four issues, Kiva contends the trial court erred by rendering judgment in CTB's favor and in failing to render judgment in its favor on its counterclaim for "lost production" damages. We will affirm in part and reverse and render in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kiva is a construction company primarily engaged in municipal utility and excavation work. In early 2003, Kiva bid on the City of Austin's Windsor area wastewater improvement project ("the Windsor Project"). In connection with the bid process, Kiva solicited bids from various subcontractors for services related to the project including the provision of traffic control signals and barricades. CTB submitted a quote in which it set forth the rates for providing the various detours and signs required for the project. Kiva accepted CTB's quote, and the parties executed a "Letter of Intent" which incorporated the rates included in CTB's original quote.

The City of Austin awarded Kiva the Windsor Project in March 2003, and Kiva began work in May 2003. CTB provided barricades and other traffic diversion services for the project, but by August 2003, disputes arose between Kiva and CTB regarding the scope of services included in CTB's original quote and the manner in which CTB billed for its services. Finally, in late August 2003, CTB informed Kiva that it would not perform requested maintenance of the barricades located on site at the Windsor Project. CTB contends that it refused to perform the maintenance services because the parties could not agree on whether such maintenance was included in the original quote for services, and because Kiva refused to agree to pay CTB for maintaining and/or moving the barricades. Ultimately, Kiva hired another company to perform traffic control services and asked CTB to remove its equipment from the site. In September 2003, Kiva sent CTB a check bearing the notation "Full Payment (Acct Paid in Full)" which CTB cashed. CTB also notified Kiva that it was suspending further performance under the Letter of Intent. CTB did not remove its traffic diversion equipment from the site, so the replacement subcontractor moved the equipment off the street and stored it.

In October 2003, Kiva and CTB began negotiating CTB's return to the Windsor Project. These negotiations were motivated by the City of Austin's requirement that a certain percentage of work on municipal projects be performed by qualifying minority-owned subcontractors. On October 8th, during the course of these negotiations, Kiva forwarded a new proposed contract to CTB. CTB made changes to the contract including deleting the liquidated damages provision and adding a provision requiring that Kiva pay CTB $375 for each time CTB visited the site to maintain its equipment. Kiva did not sign the modified contract.

At Kiva's request, CTB did return to work on the Windsor Project on December 2, 2003. CTB performed services for Kiva until December 18th, when CTB removed its personnel from the jobsite and filed a claim for $13,071.21 against Kiva's payment bond. CTB finally removed its equipment from the jobsite in January 2004. In November 2004, CTB filed a suit on a sworn account for $13,071.21. In the alternative, CTB alleged a cause of action for breach of a contract the parties allegedly entered into in October 2003, or for recovery under quantum meruit. Kiva filed a sworn denial of the account and filed a counterclaim for damages arising out of CTB's alleged failure to perform its obligations in August 2003 and in December 2003.

After a bench trial, the district court rendered judgment in favor of CTB for $12,454.18 "on the claim based on a Sworn Account," plus attorneys' fees, pre- and post-judgment interest and costs, and denied Kiva's counterclaim. In its findings of fact, the district court found that Kiva had paid CTB in full for all work conducted prior to September 15, 2003, that CTB presented an accurate systematic statement of account for goods and services provided thereafter, and that Kiva had failed to pay the account. The district court also found that Kiva and CTB entered

3

into a contract dated on or about October 8, 2003, that CTB had performed services pursuant to that contract, and that Kiva breached the contract. The district court further found that CTB satisfied the requirements of a claim under quantum meruit.

In this appeal, Kiva challenges the legal sufficiency of the evidence supporting an award of damages on CTB's sworn account, for breach of contract, or under quantum meruit. Kiva also contends that it conclusively proved its right to recover on its counterclaim for damages caused by CTB's failure to provide traffic control services in December 2003.

**STANDARD OF REVIEW**

Findings of fact entered in a case tried to the court have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When, as here, the record contains a complete statement of facts, we are not bound by the trial court's findings, and we review them by the same standards used in reviewing the evidence supporting a jury's verdict. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex. App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex. 1985). In a legal sufficiency review, we credit evidence favorable to the finding if a reasonable fact-finder could, disregard contrary evidence unless a reasonable fact-finder could not, and reverse the fact-finder's determination only if the evidence presented would not enable a reasonable and fair-minded person to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain the legal-sufficiency challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a mere

4

scintilla; or (4) the evidence conclusively establishes the opposite of the finding. *Id.* at 810-11. More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

The standard of review for conclusions of law is whether they are correct. *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 683 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We evaluate the trial court's legal conclusions independently to determine whether the trial court correctly drew the legal conclusions from the facts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

## DISCUSSION

### *Suit on a Sworn Account*

A suit on a sworn account is based on rule 185 of the Texas Rules of Civil Procedure. Rule 185 is a rule of procedure, not a rule of substantive law. *Northwest Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 702 (Tex. App.—Amarillo 1998, pet. denied). Therefore, rule 185 does not provide the basis for any cause of action. *Id.* Rather, rule 185 simply provides a procedure for the presentation of specific substantive claims enumerated in the rule. *Id.* For rule 185 to be applicable, the claim must be for a liquidated money amount. *See* Tex. R. Civ. P. 185. A claim

5

is liquidated under rule 185 if the amount of damages can be accurately calculated by the trial court from the factual allegations, as opposed to the conclusory allegations, in the plaintiff's petition and the instrument in writing evidencing the account. *Mantis v. Resz*, 5 S.W.3d 388, 392 (Tex. App.—Fort Worth 1999, pet. denied).

Here, CTB's statement of the account was attached as an exhibit to its original petition. The statement consists of an "Affidavit of Claim" executed by Marilyn J. Honea on behalf of CTB. The affidavit states that the original contract amount was $40,000, that Kiva had paid CTB $26,928.79, and the net amount owed was $13,071.21. This affidavit does not include an explanation of the basis for any of these conclusory allegations. Attached to the affidavit are 31 pages consisting of a collection of invoices, statements, and reports that are unexplained, not referred to in the affidavit, and which do not permit the trial court to accurately calculate that the amount owed by Kiva is in fact the claimed $13,071.21. CTB's pleadings do not establish that it had a liquidated claim against Kiva. Thus, CTB's cause of action did not constitute a suit on a sworn account as a matter of law. *See* Tex. R. Civ. P. 185. The evidence presented at trial further undercuts the accuracy of the sworn account. Honea, CTB's president, testified that the stated $40,000 contract amount was a "random" and approximate amount CTB expected to earn under its contract with Kiva. Honea did not testify that CTB had actually provided goods and services worth that amount. Honea further testified that Kiva had not paid CTB $26,928.79 as set forth in the "Affidavit of Claim," but rather had paid CTB only $14,848.66.

The statement of account attached to CTB's petition is not a systematic record of the materials furnished or labor done, does not accurately reflect the actual payments made by Kiva, and

6

does not reflect a liquidated claim such that the amount owed can be accurately calculated by the trier of fact. Moreover, it appears that the trial court did not rely on the sworn statement of account in awarding CTB damages. Rather, the district court awarded damages of $12,454.18, an amount less than what CTB claimed in its sworn account. We conclude that CTB's claim does not meet the requirements of rule 185 and a judgment in CTB's favor based on a sworn account was error. We sustain Kiva's first issue. We therefore consider whether the judgment may be supported by the other legal theories advanced in CTB's original petition—breach of contract and quantum meruit.

### *Breach of Contract*

The trial court found that Kiva paid CTB in full for all work performed prior to September 15, 2003. The court awarded damages of $12,484.18 for work performed after September 15, 2003. The court found that CTB proved that CTB and Kiva entered into a contract on or about October 8, 2003, and that Kiva breached the contract, causing CTB to suffer damages. Kiva contends on appeal that, as a matter of law, the parties did not enter into a new contract in October 2003, and therefore the trial court erred by awarding damages for breach of a contract. The evidence presented at trial established that Kiva sent a proposed contract to CTB, CTB modified the terms of the proposal and faxed the modified proposal to Kiva, and Kiva did not sign the modified document or otherwise acquiesce to the modified proposal. We agree that the October 2003 exchange of a proposal and counter-proposal thus did not create a contract between CTB and Kiva.

To create a binding contract, the party receiving an offer must accept the offer made. *Gilbert v. Pettiete*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). If the acceptance modifies a term of the offer, there is no agreement and the modified acceptance becomes

7

a counteroffer. *Mtrust Corp. N.A. v. LJH Corp.*, 837 S.W.2d 250, 254 (Tex. App.—Fort Worth 1992, writ denied). CTB modified Kiva's proposal by deleting the liquidated damages provision and adding a provision permitting it to charge for equipment maintenance on a per-visit basis. CTB's counteroffer altered the terms of the original offer, which contemplated a flat fee for maintenance, and operated to revoke the original offer. Kiva did not accept CTB's counteroffer, and no binding contract was created by the exchange of proposals in October 2003. In the absence of a contract, CTB is not entitled to an award of damages for Kiva's alleged breach.

There was evidence at trial that CTB returned to the project on December 2nd at Kiva's request, and that Kiva orally agreed to go forward under the payment terms contained in CTB's original quote and incorporated into the Letter of Intent. There is no evidence that, as part of that oral agreement, Kiva agreed to pay invoices CTB had submitted for services allegedly performed in September, October, and November 2003. Nevertheless, CTB abandoned the project on December 18th because it had not been paid for "months and months." Kiva's refusal to pay preexisting disputed invoices was not a breach of the parties' agreement for CTB to resume working on the project in December. There is no evidence that Kiva breached any obligation under the oral agreement for CTB to resume working on the project at the rates originally quoted.

The evidence at trial establishes that the parties terminated any contractual obligations contained in the Letter of Intent in August 2003 when CTB informed Kiva that, because of the billing dispute and disagreement regarding the scope of services, it was ceasing to provide services for the Windsor Project. Kiva sought to settle all disputes related to payment for the work performed to date under the Letter of Intent when, on September 15, 2003, Kiva sent CTB a check for "final

8

payment" which CTB accepted. *See Boland v. Mundaca Investment Corp.*, 978 S.W.2d 146, 148 (Tex. App.—Austin 1998, no pet.). CTB did not contest that this payment resolved the billing dispute between the parties for services performed through August 2003, and at trial only sought recovery for invoices generated after September 15, 2003. The district court found that Kiva paid CTB in full for work performed prior to September 15, 2003 pursuant to the Letter of Intent.

The October 2003 exchange of proposals did not create a new contract between Kiva and CTB. Although the parties orally agreed in December 2003 that CTB would return to the project under the terms of their original contract, Kiva did not agree to pay the outstanding invoices submitted by CTB for services allegedly performed in September, October, and November 2003. CTB ceased performing under the agreement and abandoned the project on December 18th. It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). There is no evidence that Kiva breached the December oral agreement at any time prior to CTB's refusing to do further work on the Windsor Project. We sustain Kiva's second issue.

### Quantum Meruit

We next consider whether the judgment can be supported by CTB's claim for damages under quantum meruit. Kiva contends that the evidence is legally insufficient to establish CTB's right to recover under quantum meruit. Quantum meruit is an equitable remedy based on the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co., Inc. v. Chevron, U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Founded on unjust

enrichment, quantum meruit "will be had when non payment for the services rendered would 'result in an unjust enrichment to the party benefitted by the work.'" *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)). To recover under quantum meruit, a claimant must prove that:

(1) valuable services were rendered or materials furnished;

(2) for the person sought to be charged;

(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

(4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Id.* Quantum meruit is generally not available, however, when there is an express contract or agreement covering the services rendered. *Vortt*, 787 S.W.2d at 944. The law will not imply a contract when one already exists. *Woodward v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964); *Double Diamond Inc. v. Hilco Elec. Co-op* 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, pet. denied). If the delivery of services and materials, and payment for them, are governed by a contract, the action sounds in contract, not quantum meruit. *Harker Heights, Tex. v. Sun Meadows Land*, 830 S.W.2d 313, 318 (Tex. App.—Austin 1992, no writ); *see also Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).

The district court awarded CTB damages of $12,454.18. It appears from the record that this amount is the sum of five invoices submitted by CTB to Kiva. The record does not, however, include evidence that all of the services or materials invoiced were accepted by Kiva or used and enjoyed by it. In fact, with respect to three of the invoices, the evidence is to the contrary.

10

Three invoices, each for $617.03, and one invoice for $3,247.50 are charges for "rental" of traffic delineators, barrels and signs for the months of September, October, and November 2003. Kiva testified that at this time it was using traffic diversion equipment supplied by a different company, and that CTB's barrels and signs had been removed from the site after Kiva requested that CTB remove its equipment from the Windsor Project. The record is devoid of any testimony regarding what benefit Kiva could have derived from CTB leaving its equipment onsite after the parties had terminated their contractual relationship and Kiva had replaced CTB with a different subcontractor. The evidence is legally insufficient to support an award of damages under quantum meruit for the services performed in September, October, and November 2003.

As noted above, the evidence showed that CTB and Kiva agreed that CTB would return to work on the project in December 2003 under the terms contained in CTB's original quote and incorporated into the Letter of Intent. The parties had an express agreement governing CTB's delivery of services in December 2003 and the prices to be paid for those services. Because an express agreement covered the subject matter of CTB's claim, CTB is not entitled to recover under quantum meruit for services provided in December 2003. *Vortt*, 787 S.W.2d at 944, *Truly*, 744 S.W.2d at 936; *Harker Heights*, 830 S.W.2d at 318. Moreover, recovery in quantum meruit is based on equity, and it is well-settled that a party seeking an equitable remedy must "do equity and come to court with clean hands." *Truly*, 744 S.W.2d at 938. In this present case, CTB abandoned the project unilaterally in December 2003 for the sole reason that Kiva refused to agree to pay the disputed September, October, and November invoices. This is not an instance in which CTB was prevented from completing a contract because of Kiva's breach. *See Beller v. DeLara*, 565 S.W.2d

11

319, 321 (Tex. Civ. App.—San Antonio 1978, no writ); *see also Glass v. Anderson*, 596 S.W.2d 507, 514 (Tex. 1980) (adopting rule that if party has committed such a serious breach of contract, whether by non-performance or repudiation, as to discharge the other party's remaining duties under contract, party in breach is not entitled to relief, equitable or otherwise, if other party refuses further performance). The equitable remedy of quantum meruit is not available under these circumstances and does not support the judgment in CTB's favor. We sustain Kiva's third issue.

***Kiva's Counterclaim for Breach of Contract***

Kiva contends that the district court erred in denying its claim for "lost production" damages because it conclusively established those damages. We disagree. The goal in measuring damages for breach of contract is to provide just compensation for the loss or damage actually sustained as a result of the breach. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). As a general rule, the measure of damages for breach of contract is the reasonable cost of expected performance. *P. G. Lake, Inc. v. Sheffield*, 438 S.W.2d 952, 956 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.). In this case, CTB's breach would entitle Kiva to the cost of obtaining replacement traffic diversion services less the unpaid portion of the contract price. Kiva's only evidence of damages was the testimony of Kiva's president, Gary Griffin, that he lost "approximately $5,400 per day" for each day that CTB had agreed to be on the project and was not. Griffin did not provide any further explanation or evidence to support his claim for "lost production." Kiva provided no basis for its bare assertion that it suffered damages of "approximately $5,400 per day" for each day that CTB was absent from the Windsor Project. Kiva made no attempt to support this figure, and there is

12

nothing in the record to show how Griffin calculated the amount. Griffin did not testify that Kiva spent $5,400 per day in procuring substitute services when CTB was absent, or that it was assessed delay penalties as a result of CTB's conduct. Far from conclusively proving an amount of damages caused by CTB's failure to perform on certain days, the evidence elicited from the testimony of Kiva's president is unsupported and provides no basis for the trier of fact to award damages for breach of contract. The district court did not err in refusing to award Kiva damages on its "lost production claim." We overrule Kiva's fourth issue.

## CONCLUSION

CTB's petition did not establish that it had a liquidated claim against Kiva and therefore was not a suit on a sworn account as a matter of law. There was no evidence to support CTB's claim that Kiva breached a contract, nor is the judgment in CTB's favor supported by its claim for recovery under quantum meruit. Consequently, we reverse the trial court's judgment in CTB's favor and render judgment that CTB take nothing by way of its claims against Kiva. We affirm the trial court's judgment that Kiva take nothing by way of its counterclaim for breach of contract.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in part; Reversed and Rendered in part

Filed: January 8, 2010

13