# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00659-CV

---

**Giddy Holdings, Inc., Appellant**

**v.**

**Alpha Five Construction, LLC; Harley Winters; and Cris W. Craft, Appellees**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-22-003708, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

---

## O P I N I O N

Appellant Giddy Holdings, Inc. challenges the trial court's final order granting appellee Alpha Five Construction, LLC's plea to the jurisdiction and dismissing without prejudice Giddy Holdings' claims against all appellees. In its plea to the jurisdiction, Alpha Five argued that unambiguous language in Giddy Holdings' original petition confirmed that Giddy Holdings was seeking damages in excess of the county court at law's statutory jurisdiction. *See* Tex. Gov't Code § 25.0003(c)(1) (establishing that statutory county court has concurrent jurisdiction with district court in civil case in which amount in controversy "exceeds $500 but does not exceed $250,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition"). Because we conclude that Giddy Holdings' original petition did not unambiguously plead for damages above the trial court's jurisdiction, we hold that the trial court did not lack jurisdiction over this case, and we reverse its order dismissing Giddy Holdings' claims and remand the case.

# BACKGROUND[1]

In April 2022, Giddy Holdings and Alpha Five entered into a contract (the "Renovation Contract") for the renovation of a building located in Austin, Texas (the "Project") for the amount of $200,000. After the parties agreed to and executed a change order, Giddy Holdings' obligation to pay Alpha Five increased to $295,375. Appellee Harley Winters, Alpha Five's president, signed the change order on behalf of Alpha Five on April 20, 2022. Brett Jacobson, Giddy Holdings' CEO, signed the change order on behalf of Giddy Holdings on May 16, 2022.

On May 18, 2022, Winters signed a "certificate of contract completion and contractor's affidavit" and a "final waiver of lien and contractor's affidavit" that were sent to Giddy Holdings.[2] These documents stated that the total amount of the Renovation Contract, including extras, was $295,375 and that Alpha Five had received full payment of that amount.[3] In addition to certifying that Alpha Five and its subcontractors had been paid in full, Winters certified that no liens had attached against the property and waived and released any and all liens or rights of lien.

On September 28, 2022, Giddy Holdings filed suit against Alpha Five, Winters, and appellee Cris W. Craft. Giddy Holdings alleged in its original petition that not long after

---

[1] The facts in this section are drawn from the parties' pleadings, motions, and the documents attached to those pleadings and motions.

[2] Although Winters certified that the work had "been satisfactorily completed" in the "certificate of contract completion and contractor's affidavit," both parties agree that the work had not been completed and that Alpha Five continued to work on the Project until sometime in June 2022.

[3] In its petition, Giddy Holdings alleges that between April 18, 2022, and May 17, 2022, it paid $293,175 to Alpha Five under the Renovation Contract.

2

Winters signed the contractor's affidavits, Giddy Holdings and Alpha Five "entered a dispute about Defendant Alpha Five's unreasonable delays in performing its duties, as well as the overall poor quality of work that Defendant Alpha Five was performing in the Project," despite Giddy Holdings' advance payments for the work. Giddy Holdings further alleged that the parties' "dispute finally came to a head on or about June 30, 2022, when Defendant Alpha Five notified Giddy that it would be pausing its services on the Project. Simultaneously, Giddy fired Defendant Alpha Five from the Project and barred Defendants from entering the Property any further." Giddy Holdings asserted that the work was not finished, so it hired the same subcontractors Alpha Five had been using and subsequently discovered that those subcontractors had not been fully paid by Alpha Five for their previous services, and Giddy Holdings then had to make the subcontractors whole so that they would finish the work.

According to Giddy Holdings, on September 16, 2022, it received a demand letter from Alpha Five demanding payment for an unpaid balance of $234,000 with no further information or detail about how or when this debt accrued. Included with the letter was a Lien Affidavit that had been filed by appellee Cris Craft as "Limited Agent of Alpha 5 Construction, LLC" in the Travis County Clerk's Office and recorded against the Property as an encumbrance. The lien affidavit averred that the remodeling work was last performed on July 1, 2022, and that the total amount owed to Alpha Five is $195,000.

Giddy Holdings alleged claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, tortious interference with contract, unjust enrichment, and statutory violations of Texas Civil Practice & Remedies Code Chapter 12, which governs fraudulent liens. In addition, Giddy Holdings sought a declaratory judgment that Alpha Five's lien is unenforceable and invalid.

3

For each of its claims, Giddy Holdings sought the following types of damages:

- Breach of contract — "unliquidated damages within the jurisdictional limits of this Court" and attorneys' fees under Texas Civil Practice & Remedies Code Chapter 38;

- Breach of duty of good faith and fair dealing — damages and exemplary damages;

- Fraud — damages and exemplary damages;

- Tortious interference with contract — "an undetermined amount of damages to its business in the form of loss of further business opportunities";

- Unjust enrichment — "restitution and payment for all benefits Defendants unlawfully obtained, in an amount to be determined by the trier of fact";

- Chapter 12 fraudulent-lien violations — statutory penalties in the amount of $20,000, court costs, attorneys' fees, and "exemplary damages in an amount determined by the court," Tex. Civ. Prac. & Rem. Code § 12.002(b)(4);

- Declaratory judgment — "reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice and Remedies Code § 37.009";

- Exemplary damages under Texas Civil Practice & Remedies Code Section 41.003;

- Attorneys' fees Texas Civil Practice & Remedies Code Section 38.001-.006 (Attorney's Fees) and Sections 134.001-.005 (Texas Theft Liability Act); and

- Damages "within the jurisdictional limits of the Court"— "monetary relief of over $100,000 but less than $1,000,000."

After Alpha Five and Winters had been served with the petition and failed to answer, Giddy Holdings filed a motion for default judgment against them.[4] In its motion, Giddy

---

[4] An affidavit of general denial had been filed on behalf of Alpha Five by a non-attorney.

Holdings sought to have the lien declared invalid and sought $203,950.10 in actual damages based on the alleged breach-of-contract and fraudulent-inducement claims. After a hearing on the motion, at which Alpha Five and Winters failed to appear, the trial court granted the default judgment against Winters, finding that he fraudulently induced Giddy Holdings into the Renovation Contract, causing damages in the amount of $203,950.10, and awarding Giddy Holdings its attorneys' fees, costs, and exemplary damages.

Giddy Holdings also filed a motion for partial summary judgment seeking to have Alpha Five's lien against it declared invalid and statutory and exemplary damages under Chapter 12. After a hearing at which Alpha Five did not appear, the trial court granted the motion, declared the lien affidavit invalid and unenforceable, ordered that Alpha Five owed Giddy Holdings statutory damages of $10,000, and awarded Giddy Holdings its attorneys' fees and costs.

After Alpha Five retained counsel, it filed an answer and later filed its own original counterclaim against Giddy Holdings, its owner Brett Jacobsen, and its former counsel Christopher Clark, asserting claims for fraud against Giddy Holdings and Jacobsen; conspiracy against all three defendants; and breach of contract, and alternatively, quantum meruit against Giddy Holdings.[5] Alpha Five asserted that it sought monetary relief in an amount "over $250,000 but under $1,000,000, which is over the jurisdictional limits" of the trial court, and thus it would seek transfer of the suit to district court. Alpha Five asserted that it was only paid $100,000 and that Giddy Holdings owed it $195,000. It further asserted damages for "late fees

---

[5] It does not appear from the record that Jacobsen or Clark were ever served with the counterclaim.

on credit cards and other payments due related to work performed" on the Project; maximum exemplary damages for its fraud claim; $5,000 for "legal expenses"; and additional "reasonable and necessary attorneys' fees, court costs," and expert-witness fees under Texas Civil Practice and Remedies Code Chapters 12 and 38 and Texas Business and Commerce Code Chapter 17.

Alpha Five also filed a plea to the jurisdiction asserting that the case should be transferred to district court because it sought "base damages of over $195,000 and matching exemplary damages under [its] fraud claims, thus exceeding the $250,000 jurisdictional limits" of the county court at law. Giddy Holdings filed its own plea to the jurisdiction arguing that Alpha Five's jurisdictional allegations did not establish on the face of the pleading that the amount in controversy for Alpha Five's counterclaim is over $250,000, and even if it were over $250,000, Alpha Five's counterclaim did not affect the county court's jurisdiction over Giddy Holdings' claims.

Alpha Five subsequently filed an amended plea to the jurisdiction. Although Alpha Five acknowledged that Giddy Holdings had not specified its exact damages, Alpha Five argued that Giddy Holdings had pleaded itself out of the court's jurisdiction by alleging that it sought damages of over $100,000 but less than $1,000,000 and by its factual allegations. Alpha Five asserted that Giddy Holdings' claims exceed the county court's jurisdictional limit because Giddy Holdings had pleaded that it paid $293,175 to Alpha Five and alleged that Alpha Five's work was of poor quality, and it sought "restitution and payment for all benefits Defendants had unlawfully obtained, in an amount to be determined by the trier of fact," as well as the "alleged cost of repair." Thus, Alpha Five argued, "the trier of fact could theoretically find that Giddy is owed full restitution." In response to the amended plea, Giddy Holdings amended its petition and added this statement to the damages allegation quoted above: "The actual damages sought by

6

Giddy [Holdings] are less than $250,000." It also amended its damages allegation for its unjust-enrichment claim to state it "seeks restitution and payment for all benefits Defendants unlawfully obtained, in an amount to be determined by the trier of fact, *but which sum is less than $250,000.*" (Emphasis added.)

At the hearing on the pleas to the jurisdiction, the trial court granted Alpha Five's plea to the jurisdiction, indicating that the basis for the ruling was Giddy Holdings' claim for restitution and its allegation of the amount that it had paid to Alpha Five. The trial court subsequently signed an order granting Alpha Five's plea to the jurisdiction and dismissing Giddy Holdings' claims without prejudice for lack of jurisdiction. The order also dismissed Alpha Five's counterclaims without prejudice "as requested." Giddy Holdings appealed the order in this Court.

After this Court's initial review of the clerk's record, we sent Giddy Holdings a letter informing it that this Court appeared to lack jurisdiction over the appeal because our jurisdiction is limited to appeals in which there exists a final or appealable judgment or order that has been signed by a judge, *see Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (explaining that "the general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment"); *see also* Tex. Civ. Prac. & Rem. Code § 51.012, and that the order appealed from did not appear to dispose of all claims and all parties. Both Alpha Five's original plea to the jurisdiction and its amended plea to the jurisdiction were filed only on its own behalf, not on behalf of any other defendant. The order did not mention defendant Craft or expressly dispose of Giddy Holdings' claims against him. In addition, the trial court's order lacked clear and unequivocal finality language. Because it was unclear whether the order disposed of Giddy Holdings' claims against all parties, after Giddy Holdings responded to our

7

letter, we abated the case to allow the trial court to clarify its order. *See Lehmann*, 39 S.W.3d at 206 (stating that when appellate court is uncertain about intent of order lacking clear and unequivocal finality language, it may abate appeal to permit clarification by trial court). The trial court subsequently issued an order clarifying that "all of" Giddy Holdings' claims "against all defendants/parties" were dismissed without prejudice for lack of jurisdiction and that Alpha Five's counterclaims "against all counterdefendants/parties" were also dismissed without prejudice as requested.

The appeal then proceeded in this Court.[6]

## ANALYSIS

Giddy Holdings challenges the dismissal of its claims for want of subject-matter jurisdiction, asserting that its original petition did not allege damages outside the county court at law's statutory limit and that its amended petition affirmatively alleged that the actual damages sought were less than $250,000.[7] Giddy Holdings contends that these pleadings should have been liberally construed to support the exercise of jurisdiction.

**Standard of review**

Whether a court has subject-matter jurisdiction is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, as Alpha Five's does in this case, we determine if the

---

[6] We note that Alpha Five and Winters filed a joint appellees' brief even though Winters did not file a plea to the jurisdiction against Giddy Holdings. The default judgment against him had been granted by the time Alpha Five filed its plea to the jurisdiction. Winters did not file a cross-appeal challenging the default judgment against him. Craft did not file an appellee's brief.

[7] Giddy Holdings challenges the county court's dismissal of its claims in four issues, but this issue is the dispositive one. We briefly address its other three issues later in the opinion.

8

pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id.* "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.*

Courts normally determine the amount in controversy solely on the pleadings. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). "The plaintiff's allegations in the petition of the amount in controversy control for jurisdictional purposes unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction." *Miranda*, 133 S.W.3d at 224 n.4.

A plaintiff should be afforded the opportunity to amend its pleading when the petition does not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but does not affirmatively demonstrate incurable defects in jurisdiction. *Id.* at 226-27. If the petition affirmatively negates the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227. The issue presented here is whether Giddy Holdings' petition affirmatively negated the existence of jurisdiction.

**Jurisdiction of county courts at law**

County courts at law are courts of limited jurisdiction. *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 402 (Tex. 2007). Texas Government Code Section 25.0003 provides as follows:

> (c)　　In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

9

(1) civil cases in which the matter in controversy exceeds $500 but does not exceed $250,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition . . . .

Tex. Gov't Code § 25.0003(c)(1). In contrast to courts of general jurisdiction, e.g., state district courts, because county courts at law are courts of limited jurisdiction, their "authority to adjudicate must be established at the outset of each case, as jurisdiction is never presumed." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).

Texas Rule of Civil Procedure 47 requires an original pleading to "contain . . . a statement that damages sought are within the jurisdictional limits of the court" and to identify a range of damages from several choices, including "monetary relief of $250,000 or less and non-monetary relief." Tex. R. Civ. P. 47(b), (c)(2). As a general rule, the allegations in the plaintiff's petition must state facts that affirmatively demonstrate the jurisdiction of the court in which the case is brought. *Brite*, 215 S.W.3d at 402. "[T]he amount in controversy is determined by the amount the plaintiff seeks to recover." *Id.* (quoting *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) ("It has long been the law that the phrase 'amount in controversy,' in the jurisdictional context, means 'the sum of money or *the value of the thing originally sued for* . . . .")).

However, "the failure of a plaintiff to state a jurisdictional amount in controversy in its petition, without more, . . . will not deprive the trial court of jurisdiction." *See Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989) (analyzing plaintiffs' original and amended petitions that did not plead amount of damages sought by either properly alleging that damages exceeded court's minimum jurisdictional limits or alleging a sum certain). Unless the face of the petition affirmatively demonstrates the absence of jurisdiction, courts

10

liberally construe the plaintiff's pleadings, and "[i]n any doubtful case all intendments of the plaintiff's pleading will be in favor of the jurisdiction." *Id.* at 804 (quoting *Pecos & N. Tex. Ry. Co. v. Rayzor*, 172 S.W. 1103, 1105 (1915)); *see also Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996) (citing *Peek*, 779 S.W.2d at 804). In *Peek*, the Texas Supreme Court held that "the omission of any allegation regarding the amount in controversy from plaintiff's petition did not deprive the court of jurisdiction, but was instead a defect in pleading subject to special exception and amendment."[8] 779 S.W.2d at 805.

**Analysis of Giddy Holdings' allegations in its original and amended petitions**

In Giddy Holdings' original petition, it pleaded for damages "within the jurisdictional limits of the Court," asserting it sought "monetary relief of over $100,000 but less than $1,000,000," which is not one of the ranges provided in Rule 47. *See* Tex. R. Civ. P. 47(c). After Alpha Five filed its amended plea to the jurisdiction, Giddy Holdings amended its petition to add this statement to its damages allegation: "The actual damages sought by Giddy [Holdings] are less than $250,000." It also added the phrase "but which sum is less than $250,000" to its unjust-enrichment claim seeking restitution for all benefits unlawfully obtained by defendants.

Alpha Five argued in the trial court and re-urges on appeal that because Giddy Holdings alleged in its original petition that it had paid Alpha Five $293,175 for work that was of poor quality or never completed and that it had to pay Alpha Five's subcontractors for work they had done before Alpha Five stopped work on the Project, Giddy Holdings unambiguously sought restitution for the entire amount it had paid Alpha Five. In addition, at the hearing on its plea, Alpha Five argued incorrectly that Giddy Holdings had the burden to provide evidence to show

---

[8] Alpha Five did not file special exceptions objecting to pleading defects in Giddy Holdings' original or amended petitions.

that it sought less than the full $293,175 that it alleged it had paid to Alpha Five.[9] *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (stating that amount in controversy is normally determined "solely on pleadings"). Alpha Five also argued in the trial court and again here that because Giddy Holdings had affirmatively pleaded itself out of jurisdiction in its original petition, its amended petition could not vest the trial court with jurisdiction. The trial court indicated at the hearing that it agreed with this argument and was granting the plea to the jurisdiction because Giddy Holdings "claimed restitution and [it] put the amount that [it was] – [it] had paid the party. [It] didn't specify" and that the problem with the amended pleading "is once you plead yourself out of our court's jurisdiction, I can't – you can't replead us back in. And I believe that I don't have any jurisdiction once that first petition was filed."

We disagree that the unambiguous language in Giddy Holdings' original petition confirms that it seeks damages above the jurisdictional limit of $250,000. Giddy Holdings did not plead that a specific amount was due to it that was above the county court's statutory limit and therefore did not plead itself out of the trial court's jurisdiction as Alpha Five argues. *See Peek*, 779 S.W.2d at 804. Although Giddy Holdings pleaded that it had paid $293,175 to Alpha Five and alleged that Alpha Five's work was of poor quality and not fully completed, as well as substandard and not of good and workmanlike quality, these allegations do not unambiguously seek reimbursement of the full amount paid to Alpha Five. Giddy Holdings pleaded that it sought "restitution and payment for all benefits Defendants had unlawfully obtained, in an amount to be determined by the trier of fact." Its factual allegations of some work having been

___

[9] Alpha Five did not argue in the trial court or on appeal that Giddy Holdings made fraudulent allegations about the amount in controversy for the purpose of obtaining jurisdiction. *See Miranda*, 133 S.W.3d at 224 n.4 (explaining that plaintiff's allegations in petition of amount in controversy control for jurisdictional purposes unless party challenging jurisdiction pleads and proves that amount-in-controversy allegations were made fraudulently to obtain jurisdiction).

completed together with its allegation that it sought restitution only for benefits unlawfully obtained by Alpha Five indicate that it was not seeking return of the full amount that it had paid to Alpha Five.[10]

A party may seek a restitution remedy that is "grounded in the principle of unjust enrichment" even when the parties have a valid contract; "the principle of unjust enrichment suggests that restitution is an appropriate remedy in circumstances where the agreement contemplated is unenforceable, impossible, *not fully performed*, thwarted by mutual mistake, or void for other legal reasons." *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 319 (Tex. App.—Austin 1992, no writ) (emphasis added); *cf. Beeman v. Worrell*, 612 S.W.2d 953, 956 (Tex. App.—Dallas 1981, no writ) ("The principle controlling a defaulting contractor's recovery for a part performance, as stated in Restatement of Contracts, § 357 (1932), is the net benefit to the owner in excess of the harm caused by the contractor's breach."). "Unlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff." *City of Harker Heights*, 830 S.W.2d at 317. Here, Giddy Holdings did not seek return of the full amount paid to Alpha Five by alleging that Alpha Five had only partially and poorly completed the work and that Giddy Holdings sought restitution for all benefits that the defendants

---

[10] Although not part of its pleadings, we note that in its motion for default judgment, Giddy Holdings sought actual damages in the amount of $203,950.10, specifying that this amount was

> the summation of (a) the $51,362.60 that Giddy spent on Subcontractors to finish the Project, (b) the $6,000 that Giddy still owes a Subcontractor, and (c) a refund of fifty percent (50%) of the payments made by Giddy to Alpha 5 ($146,587.50), as Alpha 5 at most completed fifty percent (50%) of the Project and/or the value of the work provided is no more than $146,587.50, meaning that Giddy overpaid Alpha 5 $146,587.50 for the value actually received.

13

"unlawfully obtained"—it sought restitution for that amount paid to Alpha Five less the value of the work that Alpha Five had completed.

Giddy Holdings' lack of a specific allegation in its original petition of a sum certain that was owed to it under its restitution claim is not fatal to the trial court's jurisdiction. We conclude that Giddy Holdings' allegations in its original petition, and specifically its allegation seeking restitution of the amount it paid Alpha Five in excess of the benefit it received, did not affirmatively negate the existence of jurisdiction. *See Peek*, 779 S.W.2d at 804; *see also Miranda*, 133 S.W.3d at 226-27. Therefore, we liberally construe its pleadings in favor of jurisdiction. *See Peek*, 779 S.W.2d at 804.

Also, to the extent that Giddy Holdings' original petition was defective because it failed to state a proper range of the damages sought, *see* Tex. R. Civ. P. 47(c)(2), or to state a sum certain that it sought, and thus Giddy Holdings did not affirmatively demonstrate the county court's jurisdiction, it should have been afforded the opportunity to amend its petition, *see Miranda*, 133 S.W.3d at 226-27, and therefore, the county court should have considered Giddy Holdings' allegations in its amended petition. Those amendments to its petition cured any defects by clarifying that it sought actual damages that "are less than $250,000," *see* Tex. R. Civ. P. 47(c)(2), and by affirmatively stating that its restitution claim for benefits "unlawfully obtained" by Alpha Five was a claim for "less than $250,000." We hold that the trial court erred by determining that Giddy Holdings' original petition affirmatively negated the existence of jurisdiction and by failing to consider the allegations in its amended petition. We sustain Giddy Holdings' first issue.

14

**Giddy Holdings' remaining issues**

In its second issue, Giddy Holdings asserts that Alpha Five did not plead or prove that Giddy Holdings made fraudulent allegations to obtain jurisdiction and that the trial court erred to the extent it disregarded Giddy Holdings' pleading allegations on the basis that it fraudulently alleged an amount in controversy within the court's jurisdictional limits. Alpha Five did not argue in the trial court or on appeal that Giddy Holdings made fraudulent allegations about the amount in controversy for the purpose of obtaining jurisdiction. *See Miranda*, 133 S.W.3d at 224 n.4. Instead, Alpha Five contends that Giddy Holdings' allegation that it made full payment of $293,175 is a false statement and that Giddy Holdings owes Alpha Five $195,000, but that Giddy Holdings' claim for restitution meant it sought damages in the amount of $293,175. We sustain Giddy Holdings' second issue.

In its third issue, Giddy Holdings argues that the county court erred by concluding that it lacked jurisdiction to consider Giddy Holdings' claim for declaratory judgment that the lien was invalid. Giddy Holdings asserts that because the county court had jurisdiction to consider its damages claims, the court also had jurisdiction to consider its claim for declaratory judgment. We agree. Having determined that the county court has jurisdiction over Giddy Holdings' damages claims, we conclude it also has jurisdiction over Giddy Holdings' claim for declaratory relief. The Uniform Declaratory Judgments Act is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also* Tex. Civ. Prac. & Rem. Code § 37.004. We sustain Giddy Holdings' third issue.

In its fourth issue, Giddy Holdings contends that Alpha Five's counterclaim could not deprive the county court of jurisdiction over Giddy Holdings' claims and that the county

court erred to the extent that it dismissed Giddy Holdings' claims based on a conclusion that Alpha Five had alleged an amount in controversy above the county court's jurisdictional limit. We agree. "A trial court does not lose jurisdiction over a plaintiff's claim that is properly within its jurisdictional limits simply because a defendant files a counterclaim that exceeds the court's jurisdictional limits." *Shaban v. Hertz Corp.*, No. 01-17-00580-CV, 2018 WL 6684347, at \*7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.); *see also Continental Coffee*, 937 S.W.2d at 449 (explaining general rule that once jurisdiction is "lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction"). If a counterclaim is filed that alleges an amount in controversy outside the court's limits, the court should dismiss the counterclaim and retain the plaintiff's claim that is within its limits. *See Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006) ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction."); *see also Kitchen Designs, Inc. v. Wood*, 584 S.W.2d 305, 307 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.) (concluding that jurisdiction had attached to plaintiff's claim but defendants' counterclaims that exceeded court's jurisdictional limits should have been dismissed). We sustain Giddy Holdings' fourth issue.

## CONCLUSION

Having held that the county court at law has jurisdiction to consider Giddy Holdings' claims, we reverse the county court's order dismissing Giddy Holdings' claims against appellees for want of jurisdiction, and we remand the case to the county court at law.

_____

Gisela D. Triana, Justice

16

Before Chief Justice Byrne, Justices Triana and Kelly

Reversed and Remanded

Filed:   August 28, 2025